## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| JILL L. NORTH, *et al., individually and on behalf of other similarly situated individuals,*<br><br>    Plaintiffs,<br><br>        v.<br><br>BOARD OF TRUSTEES OF ILLINOIS STATE UNIVERSITY *and*<br>C. ALVIN BOWMAN, *in his official capacity as President of Illinois State University,*<br><br>    Defendants. | Case No. 07-cv-1220 |

## O R D E R   &   O P I N I O N

This matter is before the Court on Plaintiff's Motion for Conditional Class Certification and Judicial Notice, filed on June 10, 2009. (Doc. 21). For the following reasons, the Motion is granted in part and denied in part.

### BACKGROUND

**I.    Procedural History**

On August 21, 2007, Plaintiff, Jill L. North ("North") filed a Complaint on behalf of herself and similarly situated individuals under the Fair Labor Standards Act ("FLSA") against the Board of Trustees of Illinois State University and C. Alvin Bowman, the President of Illinois State University ("ISU") (Doc. 1). Defendants' Motion to Dismiss (Doc. 5), was denied by this Court on April 3, 2008, pursuant to a Report and Recommendation by Magistrate Judge Byron Cudmore. (Docs. 8 & 9).

On April 3, 2008, North submitted an Amended Complaint, adding the nine other named Plaintiffs in this action as parties, and adding a retaliation claim under the FLSA on behalf of Plaintiff Michelle' Prinsloo.[1]  (Doc. 10).  North submitted forms consenting to join the collective action from the other nine named Plaintiffs in this action on April 4, 2008.  (Doc. 11).

The instant Motion for Conditional Class Certification and Judicial Notice was filed on June 26, 2009; Plaintiffs seek conditional certification of a FLSA collective action under Count I of the Amended Complaint, which alleges that ISU violated the FLSA's overtime pay provisions, and judicially-ordered notice to potential collective action plaintiffs.[2]  (Doc. 21).  Plaintiffs' proposed collective action is defined as: "All former Illinois State University employees employed in support of the operations of Illinois State University Housing Summer Conferencing Services at any time after May 1, 2006; and who worked more than forty (40) hours in at

---

[1]  Defendants' Answer to Plaintiff's Amended Complaint raises several affirmative defenses and other matters that are not raised in their Response to the Motion for Conditional Class Certification and Judicial Notice.  Defendants assert that Plaintiffs were not entitled to overtime pay for various reasons, or, alternatively, that they did receive the required overtime pay; they also assert that Plaintiff Prinsloo was not discharged because of retaliation.  (Doc. 16 at 11-12).  This Order & Opinion only addresses the issues raised by the Motion for Conditional Class Certification and Judicial Notice, and does not pass upon the merits of these affirmative defenses.  Some courts have indicated that if the members of the proposed collective action are subject to different affirmative defenses, conditional certification may be improper.  See., e.g., Molina v. First Line Solutions, 566 F.Supp.2d 770, 787 (N.D. Ill. 2007).  However, Defendants do not argue that these affirmative defenses will be different for different members of the proposed collective action, and the Court does not find that the assertion of these defenses precludes a collective action.  The merits of a FLSA claim are not at issue on a Motion for Conditional Class Certification and Judicial Notice.

[2]  Count II, alleging retaliation against Michelle' Prinsloo, is not discussed in this Order & Opinion, as it is not part of the proposed collective action.

least one week during their employment."³  (Doc. 21 at 2).  Defendants filed a Response to this Motion on June 26, 2009.  (Doc. 22).

II.  **Factual Background**⁴

During the summer of 2007, North, an undergraduate student at ISU, was employed by ISU as a Conference Assistant ("CA").  The other nine named Plaintiffs were also CAs in 2007.  CAs provide support when ISU hosts conferences and other events during the summer months, "assist[ing] with the day-to-day operations of the ISU residence halls, conduct[ing] administrative conference management duties, and ensur[ing] the safety and security of all guests."  (Doc. 6, Ex. A: 2007 ISU Summer Conferencing Conference Assistant Contract and Work Agreement).

All CAs in the summer of 2007 entered into the 2007 ISU Summer Conferencing Conference Assistant Contract and Work Agreement with ISU ("Work Agreement").  (Doc. 6, Ex. A).  This Work Agreement provides that CAs should expect to work an average of 27 hours per week on the "desk shift" and approximately 12 overnight on-call duty shifts from 11:00 P.M. to 7:00 A.M.  (Doc. 6, Ex. A at 2).  It also provides that CAs needed to be "[a]vailable to work June 15-17

---

³  This definition would leave out those individuals employed by ISU in the summer of 2005, but the Brief in Support of Plaintiff's Motion clearly states that the proposed collective action would include this group.  (Doc. 21 at 4).  In addition, the Amended Complaint only refers to the summers of 2005, 2006, and 2007, not 2008 and 2009, which would be included in the collective action defined by the above-quoted language.  (Doc. 10 at 9-10, 12).  Defendants have not noted these inconsistencies in their briefs, and have accepted that the Court should rule on the 2005-present proposed collective action.  (Doc. 22 at 3).  In the interest of a thorough disposition, the Court will consider whether the proposed collective action should include the 2005, 2008, and 2009 groups in addition to the 2006 and 2007 groups.

⁴  The background information presented here, unless otherwise noted, is drawn from Plaintiffs' Amended Complaint (Doc. 10) and Defendants' Answer to the Amended Complaint (16).

3

and June 20-July 1, 2007 to support mega-conference operations." (Doc. 6, Ex. A at 2). CAs received a $1,974.00 stipend, as well as a room and board package for the summer. (Doc. 6, Ex. A at 2). The parties agree that the value of the stipend and the room and board package was $4,313.00. Given the combined compensation package, Plaintiffs calculate the weekly wage for the 13 week summer work period at $386.00. Plaintiffs reason that, because the Work Agreement provided for 447 total hours, the hourly wage under the Work Agreement was $9.65.[5]

Around May 28, 2007, a new policy was announced, effective June 3, 2007, under which CAs' hours were changed: overnight on-call duty shifts were increased from 8 to 15 hours in length.[6] In exchange for this change, ISU increased the total compensation package for CAs by $150.00. Plaintiffs calculate that the increased length of the overnight shifts added a total of 77 hours to the CAs' workload, and that the $150.00 salary increase was not sufficient to even meet the minimum wage for those additional hours. In addition, Plaintiffs allege that they and the other 2007 CAs each worked in excess of 40 hours per week, and were not compensated at the required time-and-a-half rate for this overtime work. Finally, Plaintiffs allege that the 2007 conference support employees other than CAs, and the conference support employees of ISU in other years, worked under similar terms of employment, and were not paid for overtime work.

---

[5] Defendants deny that $9.65 is the appropriate calculation of the wage rate for 2007 CAs, and deny that the Work Agreement's statement of expected hours was binding. Additionally, Defendants assert that the CAs were not entitled to overtime wages, or, alternatively, that they received overtime wages in compliance with the FLSA.

[6] Defendants allege that desk shift hours were reduced as part of this change.

**LEGAL STANDARD**

Employees alleging that they have been denied required overtime compensation may bring a suit on their own behalf and on behalf of "other employees similarly situated," in a "collective action" under 29 U.S.C. § 216(b). Unlike Rule 23 class actions, plaintiffs to a FLSA collective action must "opt-in" to be parties to the suit, and they are not bound by the court's determination if they do not opt-in. Woods v. New York Life Ins. Co., 686 F.2d 578, 580 (7th Cir. 1982).[7] In addition, unlike Rule 23, § 216(b) does not provide for court-ordered notice. However, the Supreme Court has held that a court may order notice to potential plaintiffs in "appropriate cases." Hoffman-LaRoche, Inc. v. Sperling, et al., 493 U.S. 165, 169 (1989). The Seventh Circuit has held that, once the suit is filed, plaintiffs should consult with defense counsel before contacting other potential plaintiffs, and that the district court has the power to manage the notice to other plaintiffs. Woods, 686 F.2d at 580.

The FLSA does not define "similarly situated," and how a district court should decide when a case is "appropriate" for court-ordered notice has not yet been determined by the Seventh Circuit. However, the majority of courts, including the district courts of this Circuit, have adopted a two-step approach to § 216(b) collective actions. Biddings v. Lake County, 09-cv-38, 2009 WL 2175584, *2 (N.D. Ind. July 15, 2009); Russell v. Illinois Bell Telephone Co., 575 F.Supp.2d 930, 933

---

[7]  Woods, like many § 216(b) cases, was an Age Discrimination in Employment Act ("ADEA") case, rather than a FLSA case. This is because the ADEA incorporated the "collective action" provision of the FLSA. Hoffman-LaRoche, Inc. v. Sperling, et al., 493 U.S. 165, 167 (1989); Woods, 686 F.2d at 579; Molina, 566 F.Supp.2d at 787; Flores v. Lifeway Foods, Inc., 289 F.Supp.2d 1042, 1044 fn. 1 (N.D. Ill. 2003).

(N.D. Ill. 2008); DeKeyser v. Thyssenkrupp Waupaca, Inc., 08-c-488, 2008 WL 5263750, *2 (E.D. Wis. Dec. 18, 2008); Craft v. Ray's, LLC, 1:08:cv-00627-RLY-JMS, 2008 WL 4810546, *1 (S.D. Ind. Oct. 29, 2008); Bunyan v. Spectrum Brands, Inc., 07-cv-0089-MJR, 2008 WL 2959932, *2 (S.D. Ill. July 31, 2008); Austin v. CUNA Mut. Ins. Soc'y, 232 F.R.D. 601, 605 (W.D.Wisc.2006). The Central District of Illinois appears to have not yet decided which approach it will take. Both of the parties to this case argue for the two-step approach, and it will be used by the Court in deciding Plaintiffs' instant Motion.

Under the two-step approach, a court must first determine whether the plaintiff has made out a "modest factual showing" that she and the members of the proposed collective action are "similarly situated." This means that the plaintiff must put on some evidence that she and the members of the collective action were "victims of a common policy or plan that violated the law." Molina v. First Line Solutions, 566 F.Supp.2d 770, 785 (N.D. Ill. 2007) (quoting Flores v. Lifeway Foods, Inc., 289 F.Supp.2d 1042, 1044 (N.D. Ill. 2003)). If this "modest factual showing" that the members of the proposed collective action are similarly situated is met, the court conditionally certifies the collective action, and may order that notice be sent to the other members of the proposed collective action, so that they will have the opportunity to opt-in. Id. This is sometimes known as "conditional certification." Russell, 575 F.Supp.2d at 933; Jirak v. Abbott Laboratories, Inc., 556 F.Supp.2d 845, 847 (N.D. Ill. 2008); Heckler v. DK Funding, LLC, 502 F.Supp.2d 777, 779 (N.D. Ill. 2007).

At the second step, the court may revisit the "similarly situated" determination made under step one, and determine, with the benefit of evidence gleaned from discovery, whether the members of the collective action are truly similarly situated. Russell, 575 F.Supp.2d at 933. The conditional certification may be revoked at that time if the court determines that the members of the collective action are not similarly situated. Id. at 933; Heckler, 502 F.Supp. at 779.

This matter is at the first step of the process. If a court determines that the plaintiffs have succeeded under the first step, the court may order that notice be given to potential members of the collective action. Woods, 686 F.2d at 580; Molina, 566 F.Supp.2d at 785; Flores, 289 F.Supp.2d at 1045. However, the court must be careful to avoid creating an "apparent judicial sponsorship of the notice," such that the recipients of the notice would mistakenly take the notice as "a representation that the suit probably has merit." Woods, 686 F.2d at 581. At the least, the notice may not be sent on court letterhead with the judge's or other court officer's signature. Id. at 581-82.

## ANALYSIS

Plaintiffs, who were CAs in 2007, argue that they, and all the other post-2005 CAs, Conference Coordinators, Team Leaders, and/or employees with similar job titles, are similarly situated for purposes of conditional certification and that their proposed form of notice is appropriate.[8] (Doc. 21 at 11). Defendants counter that

---

[8] Due to the Court's disposition of the Plaintiffs' request for conditional certification and judicial notice to the non-2007 CAs, Plaintiffs' request that the statute of limitations be tolled to allow the 2005 CAs (and, now that it is November 2009, presumably the 2006 CAs) to opt-in is moot. Under the FLSA's applicable statute of limitations, actions alleging overtime violations must be "commenced

7

Plaintiffs are not similarly situated to the non-2007 employees because "Plaintiffs have presented no factual evidence of a common policy or plan that was in place during the summers of 2005, 2006, 2007, 2008, or 2009 that violated the FLSA," and have failed to link the 2007 CAs with the employees from other years. (Doc. 22 at 3-4).

---

within two years after the cause of action accrued," unless the violation was "willful," in which case the claim must be brought within three years. 29 U.S.C. § 255(a). Plaintiffs do allege a "willful" violation, so the three year statute of limitations can be assumed to apply until the Court determines whether the violation was "willful." The wrinkle for this matter is that, in the case of a FLSA collective action, the suit for each member of the collective action is commenced when he files a written consent to become part of the action, not upon commencement of the original suit by the representative plaintiff. Id. at § 256. Here, nine 2007 CAs have filed their consents, but no other employees have. Thus, the 2005 and 2006 employees' claims would be time-barred absent equitable tolling.

Now that the suit has commenced, Plaintiffs may no longer send their own notice to the 2005 and 2006 CAs without consulting with Defendants and obtaining court approval. Woods, 686 F.2d at 580. As explained below, the Court has determined that Plaintiffs have failed to make the "modest factual showing" required for the Court to authorize that notice be given to the 2005 and 2006 employees. As a result, there is no need to toll the statute of limitations to allow the 2005 and 2006 employees to opt-in.

The Court also finds that there is no reason to toll the statute of limitations in this case. Contrary to Plaintiffs' assertion, the doctrine of equitable estoppel is not applicable here -- under even the case cited by Plaintiffs, "the party requesting the estoppel must show that the defendants have engaged in 'affirmative conduct... that was designed to mislead or was unmistakably likely to mislead' a plaintiff" into failing to sue in time. Redman v. U.S. West Business Resources, Inc., 153 F.3d 691, 695 (8th Cir. 1998) (citations omitted); see also Flight Attendants Against UAL Offset (FAAUO) v. C.I.R., 165 F.3d 572, 577 (7th Cir. 1999). Plaintiffs have alleged no such affirmative conduct by Defendants. Defendants' Motion to Dismiss and requests for extensions of time to answer are not the type of conduct that is contemplated by equitable estoppel, and they did not prevent Plaintiffs from moving for notice to the 2005 and 2006 CAs earlier than June of 2009, especially since any delays arguably caused by Defendants ended by July 2008, after the Motion to Dismiss had been denied and the Answer had been filed.

8

## I.  Conditional Certification

Plaintiffs have met their burden of showing that the 2007 CAs are similarly situated to one another, but they have not met their burden to make a "modest factual showing" that the 2007 CAs are similarly situated to the 2007 Conference Coordinators, Team Leaders, and/or employees with similar job titles ("other 2007 employees"), or to the employees who worked during the summers of 2005, 2006, 2008, and 2009 ("non-2007 employees").[9]

---

[9]   In addition to arguing that the proposed collective action members are not similarly situated, Defendants also argue that the collective action should not be conditionally certified because the deadline set by Magistrate Judge Cudmore for joining parties had passed before Plaintiffs filed the instant motion, and because Plaintiffs' attorney is not an appropriate representative for the collective action.

Though Hoffman-LaRoche and Woods used the term "joinder" to refer to the addition of parties to a § 216(b) collective action, the Court is of the opinion that this is not true joinder such as was contemplated by the scheduling order of August 14, 2008.  In Woods, the Seventh Circuit held that a § 216(b) action is a "genuine" representative action, and that § 216(b) does not merely create a right of permissive joinder.  686 F.2d at 580-81.  Hence, after discussion with Magistrate Judge Cudmore, the Court construes the deadline set in the August 14, 2008 scheduling order as not limiting the ability of Plaintiffs to add parties to the proposed collective action.  This Order & Opinion below sets a deadline by which Plaintiffs must add parties to the proposed collective action.

As to whether Plaintiffs' attorney is appropriate to represent the collective action members, this issue is more appropriately decided at step two of the collective action analysis, which is not before the Court at this point.  Defendants allege that Plaintiffs' attorney, Thomas Benson, is North's father or step-father, and that this raises serious fairness concerns for the other members of the collective action.  (Doc. 22 at 9-10).

Defendants argue that the Court may consider Rule 23's concern for the adequacy of representation at this point and may thus reject Plaintiffs' proposed collective action.  Though Rule 23's requirements are not controlling in a FLSA collective action, "inadequacy of representation is nevertheless an equitable consideration at issue in determining whether to certify a putative class."  In re FedEx Ground Package System, Inc., Employment Practices Litigation, 3:05-MD-527 RM, 2009 WL 2242231, *6-7 (N.D. Ind. July 27, 2009) (named plaintiffs not adequate representatives because they would not meet definition of proposed collective action members and because they abandoned claims that could have benefitted other members).

In order to meet their minimal step-one burden of showing that the members of the proposed collective action are "similarly situated," Plaintiffs "cannot rely on their allegations alone to make the required modest factual showing. Plaintiffs need not provide conclusive support, but they must provide an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." Molina, 566 F.Supp.2d at 786; see also Biddings, 2009 WL 2175584, *3 ("though lenient, the 'modest factual showing' is not a mere formality"). There must be an "identifiable factual nexus" that binds the claims together -- something more "simply claiming that the FLSA has been violated." Molina, 566 F.Supp.2d at 787.[10]

---

However, at step two, the Court, in deciding whether the matter should proceed to trial as a collective action, considers "(1) whether the plaintiffs share similar or disparate employment settings; (2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness and procedural concerns." Jirak, 566 F.Supp.2d at 848 (citing Mielke v. Laidlaw Transit, 313 F.Supp.2d 759, 762); c.f. Molina, 566 F.Supp.2d at 787 fn. 18 (court can consider these factors at step one). The Court finds that this issue is more prudently considered at step two, when the Court will have the benefit of further briefing and information about the actual members of the collective action. It may be that the Court will find, by analogy to Rule 23's adequacy considerations, that Mr. Benson is not an adequate representative for the members of the collective action, if he is indeed so closely related to North. If it is determined at step two that Mr. Benson is inadequate as counsel for the collective action, the Court may revoke the conditional certification.

[10]   In Jirak, the Northern District of Illinois cited Theissen v. General Electric Capital Corporation for the proposition that only "substantial allegations" are required for a plaintiff to carry its burden at the first step. 566 F.Supp.2d at 848 (quoting 267 F.3d 1095, 1102 (10th Cir. 2001)). However, as noted below, the Court has found no case in which only allegations sufficed to carry the plaintiff's burden at step one -- in all cases, including Jirak, the plaintiff has put on some evidence.

### A.   2007 Conference Assistants

Here, Plaintiffs have made their showing that the 2007 CAs were subjected to a common policy that violated the FLSA.  They rely for their allegations of FLSA overtime violations on the terms of the 2007 Work Agreement, which was submitted to the Court in connection with Defendants' Motion to Dismiss.  (Doc. 6). Defendants have admitted that the 2007 CAs entered into this Work Agreement with ISU, and that it provided for certain expected hours, as explained above. (Doc. 16 at 3).  In addition, Defendants have admitted that the combined value of the CA compensation package was $4,313.00.  (Doc. 16 at 4).  Defendants have also admitted that the CAs' overnight on-call duty shift hours were increased in 2007 from the expected hours outlined in the Work Agreement, and that they increased the overall stipend by $150.00.  (Doc. 16 at 4).  Finally, though they dispute Plaintiffs' calculation of their overtime hours (as well as whether Plaintiffs actually received or were entitled to overtime pay), Defendants admit that their work-hours recording software, "When to Work," showed that some 2007 CAs worked more than 40 hours per week.  (Doc. 16 at 5-6).

Plaintiffs' FLSA claim is based on the allegation that the 2007 CAs were required to work more than 40 hours per week during the summer of 2007, and were not compensated with time-and-a-half wages as required under the FLSA, using the terms of the Work Agreement to establish their regular rate of pay at $9.65 per hour.  As noted above, Defendant has admitted that the Work Agreement set the terms of work for the 2007 CAs (though there is a dispute about whether the expected hours listed in the Work Agreement were binding), and that some CAs

worked more than 40 hours per week in the summer of 2007.  The 2007 CAs' claims are also supported by the nine consent forms filed by all of the named Plaintiffs except North, in which the Plaintiffs "verify…that Defendants failed to properly pay me overtime, wages, and/or benefits."  (Doc. 11).  Thus, the Work Agreement serves to bind together the 2007 CAs' claims such that the Court finds they are "similarly situated" for purposes of conditional certification and court-ordered notice.

    **B.**    **2007 Employees Other Than Conference Assistants, and Employees from Years Other Than 2007**

On the other hand, Plaintiffs, who were CAs in 2007, have failed to show a "factual nexus" between themselves, the other 2007 employees, and the non-2007 employees.  They have presented no evidence whatsoever as to the terms of employment between these two groups and ISU -- no copies of their Work Agreements, no affidavits or declarations from them, and not even any affidavits or declarations from 2007 CAs who knew something about the other groups.  This lack of evidence alone could be fatal to including these two groups in the proposed collective action, as the Court has found no cases in which a plaintiff seeking conditional certification failed to provide any evidence of similarity beyond allegations.  See, e.g., Jones v. Furniture Bargains, LLC, 09-c-1070, 2009 WL 3260004, *3-4 (N.D. Ill. Oct. 9, 2009); Biddings, 2009 WL 2175584, *3; Russell, 575 F.Supp.2d at 934; Jirak, 566 F.Supp.2d at 849; Molina, 566 F.Supp.2d at 788-89; Heckler, 502 F.Supp.2d at 780-81.  Even where courts have denied the motion for court-ordered notice, the plaintiffs provided some evidence.  See, e.g., Flores, 289 F.Supp.2d at 1046.

Plaintiffs' Amended Complaint establishes that the root of their claim is that, in 2007, ISU required the CAs to work overtime hours, in excess of those provided in the Work Agreement, and that these hours were not compensated at the rate provided for by the Work Agreement. (Doc. 10 at 10-12). As pointed out by Defendant, the Plaintiffs appear to state that the CAs' extra hours in 2007 were a result of a change announced on May 28, 2007, by David Ruszkowski, the Assistant Director of Special Projects at ISU -- not of a policy or plan that extended to other employees or other years. (Doc. 10 at 6; Doc. 21 at 5).

There has been no effort by Plaintiff to link this alleged violation of the 2007 CAs' rights to the other 2007 employees or to the non-2007 employees. In addition, Plaintiffs have submitted no evidence as to any alleged violations of the FLSA against the other 2007 employees or the non-2007 employees. See Molina, 566 F.Supp.2d at 788 (where proposed collective action covered employees of five districts of company, but evidence presented pertained only to one district, court rejected addition of employees of other four districts to collective action). Merely alleging that potential plaintiffs are "similarly situated," without more, is insufficient to support conditional certification or court-ordered notice of a proposed collective action  Plaintiffs have failed to show that there is an "identifiable factual nexus" binding the groups' claims together. Id. at 787. Therefore, conditional certification of a collective action including the other 2007 employees or the non-2007 employees is inappropriate.

## II.   Notice

As the Court has conditionally determined that the 2007 CAs are similarly situated to one another, it is appropriate for the Court to order that notice be given to other potential members of the 2007 CA collective action.[11]  As noted above, the Court in ordering notice must carefully avoid a form of notice that may lead a recipient to believe that the Court is "inviting" him to join the suit.  Woods, 686 F.2d at 581-82.  In Woods, the Court of Appeals rejected a proposed notice that was on court letterhead with the signature of the clerk of the court.  Id. at 581.

Plaintiffs' proposed form of notice is approved, with the modifications noted below.  Defendants object to the form of notice on the ground that it contains the caption of the case and the judges' names, citing the Flores case, in which the Northern District of Illinois refused to approve a notice that looked "like any other pleading, with the name of the court, the title of the action, the file number, and the assigned judge."  289 F.Supp.2d at 1047.  Flores is one of the most-cited cases in this Circuit's caselaw on § 216(b) actions.  However, courts in a number of more recent cases explicitly approved notices that contained the full caption of the case,

---

[11]   Defendants assert that, even if a collective action can be conditionally certified because the Plaintiffs are similarly situated, this is not an appropriate case for judicially-ordered notice. (Doc. 22 at 5-6).  However, Defendants have failed to cite any cases in which a court found that the plaintiff had made her showing that the proposed collective action members were similarly situated, but that the issuance of notice was inappropriate; the Court has found none, either.  Given the fact that the proposed collective action has been limited to the 2007 CAs by this Order & Opinion, the Court finds that the claims that will arise from this group are likely to be similar enough to justify the sending of notice to this group.  See Hoffman-LaRoche, 493 U.S. at 170-72 (discussing benefits of court-ordered notice in collective action).  In addition, Defendants will have the opportunity to argue that the members of the proposed collective action are, in fact, dissimilar, and that the conditional certification should be revoked when step two of the collective action analysis is reached.

as, with the caption, they "could not reasonably be construed as a letter from the Court." Russell, 575 F.Supp.2d at 938. See also Biddings, 2009 WL 2175584, *4; Jirak, 566 F.Supp.2d at 850-51 (inclusion of the entire caption makes clear that the notice is a court document and not a letter from the court). In these cases, the approved notices also included a disclaimer with language stating that "the Court has taken no position about the merits of plaintiff's claims or defendant's defenses." Russell, 575 F.Supp.2d at 938-39. See also Biddings, 2009 WL 2175584, *4; Jirak, 566 F.Supp.2d at 851.

Flores stands alone among the reported cases of this Circuit, it appears, in rejecting a notice because it included the caption of the case. The Court agrees with the Russell, Biddings, and Jirak courts, and finds that the inclusion of the caption of the case and the judges' names is not likely to mislead a recipient into believing that the notice constitutes an "invitation" from the Court. The proposed notice also states in several locations that the Court has taken no position on the merits of the action, and also notes that recipients have the right not to join the collective action and may hire their own attorney. Russell, 575 F.Supp.2d at 938-39.

However, certain modifications must be made to the proposed notice. The first two changes are made, though Defendants have not requested them, because the Court agrees with the Heckler court that, absent the alterations, the notice could be misleading to recipients.[12] Heckler, 502 F.Supp.2d at 781. First, on page

---

[12] The Heckler court also modified language in the plaintiffs' proposed notice that seemed to indicate that the defendants were likely to retaliate against potential plaintiffs for exercising their FLSA rights. Heckler, 502 F.Supp. at 781. Here, Plaintiffs' proposed notice also contains a "No Retaliation Permitted" section on page three. However, the Court does not find that this section implies that

one of the proposed notice, the second bullet-point sentence must read "The Court has conditionally allowed the lawsuit to proceed as a collective action under the Fair Labor Standards Act ("FLSA") on behalf of former ISU employees."  Id. (notice revised to show conditional nature of certification).  Second, on page two of the proposed notice, under "Description of the Lawsuit," the fourth sentence must be revised to read: "If employees are found to be eligible for unpaid overtime, they may also be eligible for liquidated damages in the amount of double their unpaid overtime wages."  Id. (notice revised to eliminate language indicating liquidated damages available in "most" cases).  Finally, given the Court's ruling that the membership of the proposed collective action is to be limited to the 2007 CAs, in the paragraph headed "Composition of the Class" on page two, the first sentence shall be revised to read:

> Ms. North and the other named Party Plaintiffs seek to recover under the Fair Labor Standards Act (FLSA) on behalf themselves, and all other similarly situated persons, employed by Illinois State University performing the duties of a Conference Assistant in support of summer conferencing operations between May 14, 2007 and August 13, 2007, and who worked more than forty (40) hours in at least one week during their employment, and who were not paid overtime compensation for hours worked in excess of forty hours in any given week.

### III. Disclosure of Information about 2007 Conference Assistants

Plaintiffs also request that the Court order Defendants to disclose the names, last known addresses, and telephone numbers of the proposed collective action members, in order that Plaintiffs may send notice to these individuals.[13]  (Doc. 21 at

---

Defendants are likely to retaliate against potential plaintiffs, and so makes no changes to it.
[13]  In an attached "Draft Order on Collective Action Notification," Plaintiffs imply that Social Security numbers are also requested.  (Doc. 21-4 at 2).  Following

1). Other than to oppose conditional certification and notice, Defendants do not specifically oppose this request. In order to facilitate the sending of notice, the Court may require that Defendants turn over this sort of information to Plaintiffs. Russell, 575 F.Supp.2d at 939; Molina, 566 F.Supp.2d at 789. As the Court has approved the sending of notice to the 2007 CAs, Defendants are instructed to supply this information to Plaintiffs, to the extent it has not already been supplied in discovery. The parties shall confer with one another as to the format in which Defendants will furnish this information to Plaintiffs. The information to be provided to Plaintiffs under this order may only be used for the purpose of notifying potential plaintiffs in this action, and may only be disseminated among Plaintiffs' counsel. Russell, 575 F.Supp.2d at 939.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Class Certification and Judicial Notice is granted in part and denied in part. (Doc. 21). Plaintiffs have met their burden of showing that the 2007 CAs are similarly situated to one another, but they have not met their burden to make a "modest factual showing" that the 2007 CAs are similarly situated to the other 2007 employees, or to the non-2007 employees. Therefore, conditional certification is granted as to the 2007 CAs, and denied as to the other 2007 employees and the employees from years other than 2007. Notice may be given in the form discussed in this Order & Opinion to the 2007 CAs who have yet to opt-in to the collective

---

Russell, the Court finds that the Plaintiffs have no genuine need of the Social Security numbers of the potential collective action members, and will not order their disclosure. Russell, 575 F.Supp.2d at 939. The names, addresses, and telephone numbers will suffice.

17

action. In order to facilitate this notice, Defendants will, pursuant to the terms of this Order & Opinion, disclose the names, addresses, and telephone numbers of the 2007 CAs to Plaintiffs.

IT IS THEREFORE ORDERED:

1.   Plaintiffs' Motion for Conditional Class Certification and Judicial Notice, is GRANTED IN PART and DENIED IN PART.   (Doc. 21).

2.   A FLSA collective action made up of individuals employed by Illinois State University as Conference Assistants in the summer of 2007 is CONDITIONALLY CERTIFIED.

3.   Plaintiffs MAY send, to potential members of the above-defined conditionally certified collective action, notice of this lawsuit and consent forms for them to opt-in to the action.

4.   Plaintiffs SHALL submit a revised version of their proposed form of notice to the Court within 3 weekdays of the date of this Order & Opinion for final approval by the Court.

5.   Defendants SHALL submit to Plaintiffs, within 7 days of the date of this Order & Opinion, the names, addresses, and telephone numbers of the potential members of the conditionally certified collective action.

6.   The information to be provided to Plaintiffs under this order SHALL be used only for the purpose of notifying potential members of the conditionally certified collective action, and SHALL be disseminated only among Plaintiffs' counsel.

7.      Any opt-in consent forms received from potential members of the conditionally certified collective action SHALL be filed with the Court by Plaintiffs within 60 days of this Order & Opinion.

8.      This matter is REFERRED to Magistrate Judge Cudmore for further discovery-related proceedings and scheduling.

Entered this <u>6th</u> day of November, 2009.

                                                                       s/ Joe B. McDade
                                                                       JOE BILLY McDADE
                                                                  United States District Judge